IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| TAMI LIGUS,<br><br>                              Plaintiff,<br><br>      v.<br><br>UNITED STATES OF AMERICA,<br><br>                            Defendant. | Case No. 3:18-cv-000187-TMB<br><br>**ORDER ON PLAINTIFF'S MOTION AND MEMORANDUM FOR SUMMARY JUDGMENT REGARDING NEGLIGENCE/LIABILITY (DKT. 31)** |

## I. INTRODUCTION

The matter comes before the Court on Plaintiff Tami Ligus' "Motion and Memorandum for Summary Judgment Regarding Negligence/Liability" (the "Motion").[1] Plaintiff filed suit against the United States for damages under 28 U.S.C. § 1346(b) and 28 U.S.C. § 2671, *et seq.*, the Federal Torts Claims Act ("FTCA").[2] Plaintiff alleges that she suffered bodily injury as a result of the United States' negligence.[3] In the present Motion, Plaintiff requests the Court grant summary judgment finding the United States liable for Plaintiff's injuries.[4] The United States opposes the Motion.[5] Neither of the Parties requested oral argument and the Court finds that it

---

[1] Dkt. 31 (Motion).

[2] Dkt. 1 (Complaint).

[3] *Id.* at 3–5.

[4] Dkt. 31.

[5] Dkt. 37 (Opposition).

1

would not be helpful. The matter has been fully briefed and is now ripe for resolution.[6] For the reasons discussed below, Plaintiff's Motion at docket 31 is **DENIED**.

## II. BACKGROUND

This case arises out of a slip and fall in a Burger King restaurant on Joint Base Elmendorf-Richardson ("JBER") in Anchorage, Alaska.[7] The record is largely undisputed and is summarized below.

On or about January 25, 2018, Plaintiff—a 96-year-old woman—was walking into the JBER Burger King with her son, Dr. Thomas Ligus.[8] After entering the vestibule of the JBER Burger King, Plaintiff slipped and fell.[9] Dr. Ligus requested the JBER Burger King staff to call the paramedics.[10] The paramedics transported Plaintiff to the emergency room on JBER.[11] At the hospital, a CT scan of Plaintiff's pelvis showed right inferior and superior pubic rami fractures and a comminuted distal third clavicle fracture.[12] On August 15, 2018, Plaintiff filed her Complaint against the United States.[13]

---

[6] Dkts. 31, 37, 41 (Reply).

[7] Dkt. 1 at 3.

[8] Dkts. 23-1 (Ballard Report); 23-2 at 4–5 (Plaintiff Deposition).

[9] Dkt. 23-2 at 5–6.

[10] *Id.* at 7–8.

[11] *Id.*

[12] Dkt. 23-3 at 1–2 (JBER ER Medical Records).

[13] Dkt. 1.

On February 13, 2020, the Court granted Plaintiff's Motion and Memorandum for Partial Summary Judgment filed at docket 23.[14] The Court made the following findings:

1. Plaintiff had incurred a comminuted distal third clavicle fracture, right inferior and superior pubic rami fractures, lumbosacral strain, thoracic kyphosis, and neck pain as a result of her slip and fall.[15]
2. As a direct result of those injuries Plaintiff underwent medical care, hospitalization, and follow-up medical visits, which were reasonable and appropriate.[16]
3. Assuming Plaintiff proves the United States was negligent, she is entitled to an award of non-economic damages and economic damages for the injuries she received as a result of this slip and fall.[17]

However, the Court made no findings as to whether Plaintiff's fall and subsequent injuries were caused by the United States' negligence or that the United States was otherwise liable for Plaintiff's injuries.

On March 18, 2020, Plaintiff filed the present Motion.[18] Plaintiff argues that summary judgment should be granted in Plaintiff's favor on the issue that the United States was negligent and is liable for her injuries.[19] In response, the United States argues that genuine disputes of

---

[14] Dkt. 29 (Order).

[15] *Id.* at 9.

[16] *Id.*

[17] *Id.*

[18] Dkt. 31.

[19] *Id.* at 1–2.

material fact remain making summary judgment inappropriate.[20] The Plaintiff filed a timely reply.[21]

### III. LEGAL STANDARD

Summary judgment is appropriate where, viewing the evidence and drawing all reasonable inferences in the light most favorable to the nonmoving party,[22] "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[23] Material facts are those which might affect the outcome of the case.[24] A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[25] "There is no genuine issue of fact if, on the record taken as a whole, a rational trier of fact could not find in favor of the party opposing the motion."[26]

A movant's burden may be met by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case."[27] Once a movant has

---

[20] Dkt. 37 at 1–2.

[21] Dkt. 41.

[22] *Scott v. Harris*, 550 U.S. 372, 378 (2007).

[23] Fed. R. Civ. P. 56(a). *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986); *Jensinger v. Nev. Fed. Credit Union*, 24 F.3d 1127, 1130–31 (9th Cir. 1994).

[24] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.").

[25] *Id.* at 248.

[26] *Mills v. Wood*, No. 4:10-cv-00033-RRB, 2015 WL 2100849, at *1 (D. Alaska May 6, 2015), *aff'd in part*, 726 F. App'x 631 (9th Cir. 2018) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986)).

[27] *Celotex*, 477 U.S. at 325.

met its initial burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and identify facts which show a genuine issue for trial.[28] "Where . . . the case turns on a mixed question of fact and law and the only disputes relate to the legal significance of undisputed facts, the controversy is a question of law suitable for disposition on summary judgment."[29]

## IV. DISCUSSION

The only question before the Court is whether there is a genuine issue of material fact as to the United States' alleged negligence. In support of the Motion, Plaintiff relies on the deposition testimony of Plaintiff and Dr. Ligus;[30] a video that allegedly shows Plaintiff's fall and the floor conditions;[31] photographs of the vestibule and mat;[32] and the opinions of a purported "flooring expert," Blair Pruitt.[33] Plaintiff argues that there is not a genuine dispute of material fact whether the United States negligently maintained the floor in the vestibule.[34]

The United States argues that there are several facts still in dispute and that Plaintiff exaggerates the conclusiveness of the evidence.[35] Specifically, the United States contends that the video referenced by Plaintiff does not indisputably show the precise cause of Plaintiff's fall or the

---

[28] *Id.* at 323–24.

[29] *Coomes v. Edmonds Sch. Dist. No. 15*, 816 F.3d 1255, 1262 (9th Cir. 2016) (quoting *Wash. Mut. Inc. v. United States*, 636 F.3d 1207, 1216 (9th Cir. 2011)).

[30] Dkt. 31-3 (Ligus Deposition).

[31] Plaintiff did not submit the video for the Court to review. Instead, the video is referenced throughout Mr. Pruitt's report and deposition. Dkt. 31-1 (Pruitt Report); 31-2 (Pruitt Deposition).

[32] The only photographs contained in the record are contained within Pruitt's report.

[33] Dkt. 31-1; 31-2.

[34] Dkt. 31 at 6.

[35] Dkt. 37 at 3–4.

5

location of the floormat.[36] Moreover, the United States' expert, Susan Evans, reviewed the same evidence as Mr. Pruitt yet arrived at opposing conclusions.[37]

Pursuant to the principle of negligence under Alaska law, "[a] landowner or other owner of property must act as a reasonable person in maintaining his property in a reasonably safe condition in view of the circumstances, including the likelihood of injury to others, the seriousness of the injury, and the burden on the respective parties of avoiding the risk."[38] However, the Alaska Supreme Court has cautioned that questions of negligence are generally "not susceptible to summary determination and are better left to the trier of fact because of the question of reasonableness."[39]

Here, there is conflicting evidence on the reasonableness of the United States' conduct. Plaintiff argues that the United States was negligent because: (1) the floormat was not placed close enough to the entryway door, (2) the floormat was saturated with water, (3) the matless floor was not cleared of water, and (4) there was insufficient warning of the hazards.[40]

---

[36] *Id.*

[37] *Id.* at 5. Dkt. 37-1 (Evans Report).

[38] *Burnett v. Covell*, 191 P.3d 985, 990 (Alaska 2008) (quoting *Webb v. City & Borough of Sitka*, 561 P.2d 731, 733 (Alaska 1977) *superseded on other grounds by* AS 09.65.200, *as recognized in Univ. of Alaska v. Shanti*, 835 P.2d 1225, 1228 n.5 (Alaska 1992)).

[39] *Edenshaw v. Safeway, Inc.*, 186 P.3d 568, 570 (Alaska 2008) (citing *Webb*, 561 P.2d at 735) (internal quotations omitted).

[40] Dkt. 31 at 4–8. The allegations are supported by the conclusion contained in Mr. Pruitt's report. Dkt. 31-1.

However, after reviewing the evidence, the United States' expert has expressly contradicted each of these claims.[41] Rebutting Plaintiff's first and second assertions, Ms. Evans claims "[f]loor mats placed in the vestibule were of a suitable style, placed suitably, and were properly maintained."[42] As to Plaintiff's third assertion, Ms. Evans opined the flooring in the vestibule "appears consistent with commercial flooring" that tends to be more slip resistant when wet than dry.[43] Finally, in response to Plaintiff's allegation that there was no visible warning outside the entryway, Ms. Evans opines that "Burger King provided sufficient notification to patrons that the floor might be wet and to use caution."[44] Ultimately, Ms. Evans states that she disagreed "that the walking surface at the vestibule walkway constituted a slip and fall hazard" or "that the circumstances created the unsafe conditions."[45]

Plaintiff argues that Ms. Evans' conclusions do not create genuine issues of material fact. Plaintiff contends that Ms. Evans' opinions regarding the conditions in the vestibule are irrelevant because they are solely based on photographs that were not taken on the day Plaintiff fell.[46] However, that is not the case. Ms. Evans' report indicates that her opinions were based on several materials including: the photographs of the vestibule, the video that shows a portion of the floormat and vestibule at the time of Plaintiff's fall, the Complaint, the Liguses' depositions, and other

---

[41] Dkt. 37-1 at 4–8. In preparing their respective reports, Ms. Evans and Mr. Pruitt reviewed much of the same material. *Compare* Dkt. 31-1 *with* Dkt. 37-1.

[42] Dkt. 37-1 at 5.

[43] *Id.* at 6.

[44] *Id.* at 4.

[45] *Id.* at 8.

[46] Dkt. 41 at 3.

7

documents.⁴⁷ Having reviewed these materials, Ms. Evans—like Plaintiff's own expert—drew a conclusion about the probable conditions in the vestibule at the time of Plaintiff's fall.⁴⁸ The Court finds that Ms. Evans' conclusions are relevant to the issue of negligence.

Accordingly, viewing the evidence and drawing all reasonable inferences in the light most favorable to the nonmoving party, a jury could find that the United States "act[ed] as a reasonable person in maintaining [its] property in a reasonably safe condition."⁴⁹

## V. CONCLUSION

For the foregoing reasons, Plaintiff's Motion at docket 31 is **DENIED**.

IT IS SO ORDERED.

Dated at Anchorage, Alaska, this 30th day of July, 2020.

*/s/ Timothy M. Burgess*
TIMOTHY M. BURGESS
UNITED STATES DISTRICT JUDGE

---

⁴⁷ Dkt. 37-1 at 3.

⁴⁸ *Compare* Dkt. 31-1 *with* Dkt. 37-1.

⁴⁹ *See Burnett*, 191 P.3d at 990.